**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

In re:                                                  )
                                                        )
DELIA ANN DOWD,                    )         Case No. 19-11285-BFK
                                                        )         Chapter 7
                                                        )
            Debtor.                        )
_____)

**MEMORANDUM OPINION AND
ORDER GRANTING U.S. TRUSTEE'S
MOTION TO DISMISS
BANKRUPTCY CASE FOR ABUSE**

This matter came before the Court on the U.S. Trustee's Motion to Dismiss this bankruptcy case for abuse under Bankruptcy Code Sections 707(b)(2) and 707(b)(3). Docket No. 14. The Debtor filed an Opposition to the Motion. Docket No. 17. The Court heard the evidence and the parties' arguments on September 10, 2019. For the reasons stated below, the Court will grant the U.S. Trustee's Motion under Section 707(b)(2).

**Findings of Fact**

The Court, having heard the evidence, makes the following findings of fact.

*A. The Debtor's Background.*

1.     The Debtor is 54 years old and resides in an apartment in Alexandria, Virginia. She has a Masters in Social Work.

2.     She was employed with the Prince William County School System for 17 years as a school social worker. Her annual salary there was $89,000.00, plus health benefits. She voluntarily left that employment in September 2017.

3.     In the Fall of 2017, the Debtor was hired for a part-time position (25 hours per week) with the City of Alexandria school system at an annual salary of $43,000.00. Although she

1

initially did not have health benefits, she has now been afforded those benefits. She does not qualify for retirement benefits as a part-time employee of the City.

4. The Debtor also works part time (roughly 20 hours per week) at a retail establishment.

5. Her gross income in 2018 was $63,000.00. Accordingly, she accrued a $5,000.00 tax obligation to the IRS because she was above the threshold to qualify for marketplace insurance through the Affordable Care Act (ACA).

6. She has student loans totaling approximately $100,000.00, which are in a payment suspension status owing to her bankruptcy filing. She was paying about $800.00 per month on these loans when she was employed with Prince William County.

B. *The Debtor's Bankruptcy Filing.*

7. On April 22, 2019, the Debtor filed a Voluntary Petition under Chapter 7 with this Court.

8. The Debtor's Statement of Current Monthly Income (Form 122A-1) indicates that she is above the median for Virginia debtors. Docket No. 1, pp. 44-45.

9. Her Means Test Calculation (Form 122A-2) indicates that she has $286.87 in monthly disposable income, which translates to $17,212.20 over 60 months. *Id.*, p. 53, Lines 39c, 39d. There is, therefore, a presumption of abuse under Section 707(b)(2)(A)(i). *Id.*, Line 40.

10. In her response to the special circumstances inquiry on Line 43 ("Do you have any special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative?"), the Debtor answered "No." *Id.*, p. 54, Line 43.

11.     In her Schedule A/B (Property), the Debtor listed a 2016 Nissan Murano, with 50,000 miles. *Id.*, p. 10. She listed the vehicle with a value of $19,000.00 and a lien in the amount of $23,134.00. *Id.*, p. 16, Sec. 2.1. The interest rate on this loan was 3%. She listed a monthly payment on Schedule J in the amount of $508.00 for this vehicle. *Id.*, p. 31, Line 17a.[1]

12.     In her Statement of Intention, the Debtor stated that it was her intent to "retain the property [the Murano] and redeem it." *Id.*, p. 40.

C.  *The Debtor Purchases a New Vehicle.*

13.     On June 12, 2019, the U.S. Trustee filed a Notice of Presumed Abuse in this case. Docket No. 13.

14.     The U.S. Trustee filed a Motion to Dismiss the case for abuse on July 3, 2019. Docket No. 14.

15.     A few days later, the Debtor purchased a used vehicle for $19,900.00 (including the Murano as a trade-in). The Debtor's new monthly payment is $526.00 per month, at an interest rate of 26%.

16.     The Debtor testified that she purchased the vehicle because the steering wheel on the Murano was locking up while the car was in motion. She testified that she took the car to a mechanic at a Nissan dealership, and to two friends, but they could not remedy the problem.

17.     When asked if she could pay a Chapter 13 plan payment of approximately $300 per month, the Debtor responded that "it would be a struggle."[2]

**Conclusions of Law**

---

[1] Schedule J requires debtors to list their estimated "Ongoing Monthly Expenses." *Id.*, p. 30.
[2] The Debtor's counsel proffered a "pro forma" means test dated as of the date of the hearing, September 10, 2019, to demonstrate her finances post-petition. The Court sustained an objection to the document because it was clear that the Debtor was not familiar with it - she testified that she had reviewed it "in the beginning of the year," when the form referred to the purchase of the newer vehicle in July 2019. She appeared to confuse this document with the Schedules that she reviewed and signed when she filed for bankruptcy.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

The U.S. Trustee's Motion presents two issues: whether the Debtor meets the means test under Section 707(b)(2), and if not, whether the case should be dismissed for abuse under the totality of the circumstances under Section 707(b)(3). The Court will address the Section 707(b)(2) presumption of abuse, below. Because the Court finds in favor of the U.S. Trustee on this issue, the Court need not address the totality of the circumstances under Section 707(b)(3).

1. *Presumed Abuse – Section 707(b)(2).*

The means test of Section 707 was enacted as a central feature of the BAPCPA Amendments to the Bankruptcy Code in October 2015. Section 707(b)(1) of the Code provides that the court may dismiss the case, or with the debtor's consent convert the case to Chapter 11 or Chapter 13, "if it finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1) (2018). A presumption of abuse arises under Section 707(b)(2) if the debtor does not meet the means test of Section 707(b)(2). *Id.* § 707(b)(2). The means test was designed "to help ensure that debtors who can pay creditors do pay them." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 64 (2011) (citing H.R. Rep. No. 109–31, pt. 1, at 2 (2005)).[3] The Debtor argues that her circumstances have changed post-petition, and that she would now fit comfortably within the means test with no presumption of abuse. The issue thus becomes whether, absent the kind of extraordinary circumstances described in Subsection (b)(2)(B), the Court can consider post-petition changes in circumstances.

---

[3] The means test applies only to debtors whose debts are primarily consumer debts. 11 U.S.C. § 707(b)(1) (means test applies in "a case filed by an individual debtor under this chapter whose debts are primarily consumer debts"). The Debtor does not dispute that her debts are primarily consumer debts.

After the enactment of the means test, courts wrestled with whether the test should be applied mechanically, or whether there was some flexibility to view the debtor's financial circumstances in a more real-world light. The Supreme Court held in a pair of cases that in Chapter 13 the courts can, and should, review the debtor's means test with a forward-looking approach, rather than mechanically. *See id.* (the "expense-side" case); *Hamilton v. Lanning*, 560 U.S. 505 (2010) (the "income-side" case). In *Ransom*, the Court held that Chapter 13 debtors may not deduct secured debt payments where the debtor owns a vehicle free and clear and has no ongoing monthly car payments. 562 U.S. at 72. In *Lanning*, the Court held that bankruptcy courts should consider significant changes to the debtor's income that are "known or virtually certain" to occur during the case. 560 U.S. at 517.

The Fourth Circuit followed suit in *Quigley*, in which it held that Chapter 13 debtors may not take deductions for secured debt on collateral (in *Quigley*, two all-terrain vehicles) that the Debtor intended to surrender. *In re Quigley*, 673 F.3d 269, 273-74 (4th Cir. 2012). This Court applied *Quigley*'s rationale in the Chapter 7 context, holding that Chapter 7 debtors may not deduct secured debt payments on real estate that the debtor intends to surrender at the outset of the case. *In re Campbell*, 2016 WL 4150663, at *7 (Bankr. E.D. Va. Aug. 3, 2016) ("In the Court's view, *Lanning*, *Ransom* and *Quigley* are all grounded in making the means test more real-world based, as opposed to a hypothetical or unrealistic result.")

The means test under Section 707(b)(2) is intended to be a snapshot of the Debtor's finances as of the petition date. *See In re McKay*, 557 B.R. 810, 815-16 (Bankr. W.D. Okla. Sept. 13, 2016) ("The great weight of authority holds that the means test calculation of § 707(b)(2) is based on a 'snapshot' of a debtor's financial situation *as of the petition date*, without consideration of whether the debtor's expenses may change after that date.") (emphasis in

5

original); *In re Sonntag*, 2012 WL 1065482, at *4 (Bankr. N.D. W. Va. Mar. 28, 2012) ("Post-petition changes to a debtor's financial circumstances—such as future income, expenses, and financial intentions—are essential to a determination of a debtor's 'financial situation' as stated in § 707(b)(3)(B), and unlike the analysis regarding abuse pursuant to § 707(b)(2), a totality of the circumstances test is not a 'snapshot' examination."); *In re Polinghorn*, 436 B.R. 484, 487-88 (Bankr. N.D. Ohio 2010) ("[T]he 'means test' calculation of § 707(b)(2) is based on a 'snapshot' of a debtor's financial situation as of the petition date. Thus, post-petition changes to a debtor's income and expenses, as well as a debtor's future intentions, while possibly relevant to a determination of abuse under § 707(b)(3), are not taken into consideration when determining whether the granting of relief should be deemed to be presumptively abusive for purposes of § 707(b)(2)."); *In re Ellinger*, 370 B.R. 905, 910 (Bankr. D. Minn. 2007) ("The means test provides a snapshot of the debtor's finances. The means test is not meant to be continually updated as the debtor's circumstances change.") For the most part, post-petition changes to the debtor's income and expenses are dealt with under Section 707(b)(3)'s totality of the circumstances test, rather than Section 707(b)(2)'s means test calculation. Exceptions arise, though, where the debtor seeks to deduct secured debt payments for which he or she intends to surrender the collateral at the outset of the case, as in *Quigley* and *Campbell*, or where the debtor's income is virtually certain to change meaningfully during the course of the case, as in *Lanning*. The *Lanning*, *Ransom* and *Quigley* cases do not support the proposition that ordinary changes to the debtors' financial circumstances post-petition – the purchase of a car, for example – should be considered for purposes of Subsection (b)(2)'s presumption of abuse.

The Debtor's ordinary, post-petition changes in financial condition cannot be considered for purposes of the means test. The statute itself requires that the debtor use the applicable

monthly expense amounts in the National Standards, and the debtor's actual monthly expenses in the Other Necessary Expenses categories, "as in effect *on the date of the order for relief*." 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added). This is a clear indication that the Debtor's post-petition purchase of a newer vehicle with a slightly higher monthly payment is not a circumstance that entitles the Debtor to re-calculate her means test eligibility.[4]

This case can be contrasted with the Court's previous decision in *Campbell*. In *Campbell*, the debtor stated his intent to surrender the property from the outset of the case. He had already moved from the property to an apartment and had stopped making monthly mortgage payments many months before he filed his petition. In this case, the Debtor indicated in her Statement of Intention that she intended to retain and redeem the Murano. It was only three months into the case (and, in the U.S. Trustee's view, after the U.S. Trustee filed his Motion to Dismiss the case for abuse) that the Debtor in this case decided to purchase a new vehicle.

The Debtor's means test in this case indicates that she is above median and that there is a presumption of abuse. Under Subsection (b)(2)(B) "the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces". 11 U.S.C. § 707(b)(2)(B)(i). This Court has held that "[i]ncluding the two special circumstances examples . . . signals an intent that the circumstances be of a more severe nature than ordinary job changes or income fluctuations." *In re Burdett*, 2013 WL 865575, at *4 (Bankr. E.D. Va. Mar. 7, 2013). The Debtor acknowledged in her means test form that there were no special circumstances within the meaning of Subsection (b)(2)(B). Without circumstances of a serious nature required by Subsection (b)(2)(B), the Debtor's purchase of the vehicle does not constitute special circumstances under Subsection (b)(3).

---

[4] Although the form itself doesn't necessarily dictate the result, there isn't any place on the means test form (Form 122A-2) to describe post-petition changes in circumstances.

Finally, the Debtor's position would read the special circumstances provision of Subsection (b)(2)(B) out of the Code. Whereas Congress has indicated that "special circumstances" be of a serious nature, *see In re Burdett*, 2013 WL 865575, at *4, the Debtor seeks an exemption from the means test based on the purchase of an automobile three months after she filed her petition. This is not what Congress intended in enacting Subsection (b)(2)(B). *See Ransom*, 562 U.S. at 70 (emphasizing that each word in a statute must carry meaning). The Debtor herself acknowledged in her Means Test form that there were no special circumstances.

The Court finds, therefore, that the presumption of abuse arises in this case and has not been rebutted by special circumstances.

*2. The Totality of the Circumstances – Section 707(b)(3).*

Under Section 707(b)(3), where the debtor passes the means test and there is no presumed abuse, the court "shall consider:"

(A)  whether the debtor filed the petition in bad faith; or

(B)  the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3)(A)-(B).

The Fourth Circuit has ruled: "The means test is not conclusive, the presumption is rebuttable, and a court may still find abuse even if there is no presumption." *Calhoun v. U.S. Trustee*, 650 F.3d 338, 342 (4th Cir. 2011).

Because the Court finds that the presumption of abuse arises under Section 707(b)(2), the Court need not address the totality of the circumstances under Section 707(b)(3).

**Conclusion**

It is therefore **ORDERED**:

1. The U.S. Trustee's Motion to Dismiss is granted, and the case will be dismissed without prejudice.

2. The Clerk will mail copies of this Memorandum Opinion and Order, or will provide cm-ecf notice of its entry, to the parties below.

Date: Oct 1 2019

Alexandria, Virginia

/s/ Brian F. Kenney
Brian F. Kenney
United States Bankruptcy Judge

Entered on Docket: October 1, 2019

Copies to:
Delia Ann Dowd
1202 S. Washington St., Apt. 419
Alexandria, VA 22314
*Debtor*

Robert Sergio Brandt
The Law Office of Robert S. Brandt
1513 King Street
Alexandria, VA 22314
*Counsel for Debtor*

Donald F. King
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
*Chapter 7 Trustee*

Jack Frankel
Office of the U.S. Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314
*Counsel for U.S. Trustee*